**Michael I. Inzelbuch, Esq.**
**1340 West County Line Road**
**Lakewood, New Jersey 08701**
**732-905-0325**
**MII-5635**

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————

D.S. & R.S. o/b/o J.S.

    Plaintiff,

      v.

HOWELL TOWNSHIP
BOARD OF EDUCATION,

    Defendant.

———————————————————————

No._____

Judge _____

**VERIFIED COMPLAINT**
**PURSUANT TO**
**20 U.S.C. § 1415(i)(2)(A)**

Plaintiff, on behalf of their minor child, J.S., by their attorney, Michael I. Inzelbuch, Esquire, by way of complaint allege and state as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  J.S. is a 7-year-old (DOB: April 17, 2012) student who *continues* to attend the New Jersey Department of Education ("NJDOE") approved School for Children with Hidden Intelligence (hereinafter referred to as "SCHI School"), Lakewood, New Jersey.

2.  Plaintiff's, D.S. & R.S., are the parents of J.S. and previously resided within Lakewood, New Jersey, and as of approximately July 2018 moved to Howell Township, New Jersey. [It should be noted that the SCHI School is less than approximately fifteen (15) minutes from both their prior and current residences.]

3.     Plaintiff, although well known to the Defendant and its counsel, is not expressly named herein by their given names because of the privacy guarantees provided by the Individual with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400 et seq., as well as the Family Educational Rights Act, 20 U.S.C. § 1232g and 34 C.F.R., part 99.

4.     Defendant Howell Township Board of Education (hereinafter the "District"), upon information and belief, is the legal body that has oversight responsibility for the Howell Township, New Jersey, public school system, including but not limited to, the administration of its special education programs.

5.     The District's business address is 200 Squankum-Yellowbrook Road, Howell, New Jersey 07731.

6.     This action is brought pursuant to the provisions of the IDEA, in particular, 20 U.S.C. § 1415(i)(2)(A), and New Jersey Administrative Code 6A:14-2.7(v), seeking *de novo* review and reversal of the June 11, 2019 DECISION of the Honorable Dorothy Incarvito-Garrabrant, Administrative Law Judge, New Jersey Office of Administrative Law (**EXHIBIT "A"** and **EXHIBIT "B"**).  This action is being brought in an effort to correct clear errors of fact and law and secure federal and state educational rights denied to the Plaintiffs.

7.     In addition to the provisions of the IDEIA, this Court is vested with jurisdiction over this action without regard to the amount in controversy pursuant to 28 U.S.C. §§ 1331 and 1367.

8.     Venue is proper under 28 U.S.C. § 1391(b) in that Plaintiff and Defendant all reside or are situated within the District.

## FACTS

9.    J.S. is Eligible for Special Education and Related Services as "Other Health Impaired" ("OHI"), in part, due to the following medical and educational conditions that significantly impact his educational experience: WAGR Syndrome; Kidney Tumor; A-Anirida (absence of colored part of the eye – Iris); G-Genitourinary Anomalies, vision issues, cancer, borderline IQ, etc.

10.    J.S. *continues* to attend the New Jersey Department of Education ("NJDOE") approved private school for the disabled, the School for Children with Hidden Intelligence ("SCHI"), Lakewood, New Jersey, wherein J.S. has attended since the age of 3 via Individualized Education Plans ("IEPs") and is thriving therein educationally, socially, and emotionally.

11.    The last IEP is dated "April 26, 2018" and was authored by the *prior* school district, to wit, the Lakewood Public School District, and is attached hereto as **EXHIBIT "A"**.

12.    The aforementioned "April 26, 2018" IEP states, in part, the following:

    a.    "General Description: At an eligibility meeting on 6/15/2017, Jeff was found to be eligible for special education and related services under the category of Other Health Impaired. Jeff participates in a self-contained class at the School for Children with Hidden Intelligence. Jeff is diagnosed with WAGR Syndrome (W – Wilms tumor (a tumor of the kidneys), A-Anirida (absence of the colored part of the eye – Iris), G-Genitourinary anomalies, and R-Retardation. Jeff had surgery on May 8,2 017 to remove a Wilms Tumor. Jeff receives speech and

language therapy, occupational therapy, physical therapy, vison therapy, feeding therapy, one to one aide, and specialized transportation." (Page 5);

b. "<u>Current Educational Functioning</u>: Jeff has a diagnosis of WAGR Syndrome and presents with significant delays in the areas of attention and memory, cognition, language skills, motor skills, self-help and social emotional development. Jeff has impaired vision in his right eye and no vison in the left. He struggles with distractibility and hyperactivity. Jeff requires a personal aide to help him remain regulated, manage his behavior, navigate his environment and individualize instruction. In February 2017, Jeff was diagnosed with a Wilms tumor in his kidney. It was removed surgically, and was followed with chemotherapy through September 2017. Jeff missed approximately 3 months of school at that time. It took him another 3-4 months to regain his strength and recoup his skills. Additional, Jeff is followed by multiple specialists and has frequent absences from school due to his medical needs." (Page 5);

c. "<u>Behavior, Personal / Social Development</u>: Demonstrates areas of concern which do affect own or other's educational performance." (Page 13);

d. "Areas of Concern: Inattentiveness / Distractibility. Jeff has a one to one aide and is provided with redirection. His teachers and therapists maintain a demand and wait until he complies. The teacher is working on expanding the time that Jeff has to wait for a preferred item/activity. He is provided with verbal prompting." (Page 13);

e. "Statement of Eligibility: Jeff is eligible for special education and related services under the category of Other Health Impaired. Jeff is diagnosed with WAGR Syndrome, a rare genetic syndrome in which affected children are predisposed to develop Wilms tumor (a tumor of the kidneys), Aniridia (absence of the Iris), Genetorinary anomalies (undescended testes) and Retardation. Jeff presents with considerable developmental delays and significant vision impairments." (Page 17);

f. "Health / Medical Background: Jeff has a diagnosis of WAGR Syndrome. Jeff recently had surgery to remove a Wilms Tumor. He had a few months of chemotherapy prior to this surgery. Mrs. Singer reported that he is considered cancer free and has three more rounds of chemotherapy. He is followed by a Urologist, Nephrologist, Pulmonologist, Orthopedist, ENT, Ophtalmologist, and Oncologist at CHOP. Jeff does not have vision in his left eye and little vision in his right eye." (Page 17);

g. Extended School Year ("ESY") is provided; and

h. "Identify the supplementary aids and services that were considered and rejected (N.J.A.C. 6A 14-4.2(a)8i). Explain why they are not appropriate to meet the student's needs in the general education class: In making this student's program decision, a number of program options were considered, including a general education program with modifications (academic / behavioral), a general education program with a teachers aide, a general education program with services, in-class support, a self-contained class with increased mainstreaming, various combinations of the above mentioned programs were also considered. These program options were rejected based on the student's academic needs. Based upon the information listed throughout this IEP it was determined that his proposed placement with the Out of District: Private School program is the least restrictive environment that will meet his academic/social needs. In making this student's program decision, a number of program options were considered, including a general education program with modifications (academic/behavioral), a general education program with a teacher's aide, a general education program with services, a self contained class with increased mainstreaming, various combinations of the above mentioned programs were also considered. These program options were rejected based on the student's academic and therapeutic needs.

Jeff has WAGR Syndrome and he suffers from vision loss in his left eye and little vision in his right eye. He requires visual accommodations and modifications. Jeff presents with impulsivity and decreased attention span. He also presents with decreased core strength and deficits in his strength, balance, range of motion, gait, and gross motor control. Jeff requires a highly structured classroom environment with predictability and consistency. Jeff requires a highly structured environment with a low staff to student ratio where his academic, visual, cognitive, sensory, and behavioral needs can be met. Due to Jeff's significant medical issues as well as his delays it is recommended for Jeff to continue in his program in an Out of District School at this time. Jeff has made individual progress in this setting. Based upon the information listed throughout this IEP it was determined that the self contained program in SCHI continues to be the least restrictive environment that will meet his individual needs at this time. <u>2. Document the comparison of the benefits provided in the general education class and the benefits provided in the special education class (N.J.A.C. 6A: 14-4.2(a)8ii): General Education with modifications</u>: Benefits Provided In The General Education Class May Include: Social skills development Increased social initiations and relationships Peer role models for academic, social and behavior skills Greater

access to general curriculum Increased inclusion in future environments Greater opportunities for interactions with a wide range of peers and work in groups with a variety of students with diverse academic and emotional backgrounds. Out Of District The benefits provided Jeff by this out-of-district program include the high degree of support and structure required to meet the individual needs of this student. Benefits Provided In The Special Education Class May Include: Individual instruction Specialized materials Close and frequent monitoring Integrated therapies Lower teacher-student ratio Modifications to the environment and curriculum Modifications to the delivery of instruction Accommodations to social and behavioral expectations." (Pages 22-23)

13.    The parents attended a "Transfer Student Immediate Review" meeting on July 19, 2018 wherein the Child Study Team decided that the aforementioned Lakewood IEP could be implemented at the district's Memorial Elementary School (**EXHIBIT "B"**).

14.    The parents of J.S. observed the proposed Howell Township program on Monday, July 23, 2018, and rejected same. The Howell Township program is not appropriate for J.S. for numerous reasons, including, but not limited to, the SCHI program provides a developmental program with an ABA input; his classroom does not exceed five (5) special education students and, when appropriate, provides reverse inclusion; he benefits from a Teacher of the Visually Impaired ("TVI") who is employed by the SCHI School; the students at Howell school were

much higher functioning that J.S. both academically, socially, and emotionally the duration and frequency of services did not meet the IEP mandates, etc.

15.    J.S. has had several surgeries for tumors, glaucoma, cataracts, testes, and, unfortunately anticipates several additional surgeries. The surgeries were completed at the Children's Hospital of Philadelphia ("CHOP"), Philadelphia, Pennsylvania, and Willseye Hospital, Philadelphia. The most recent surgery was in approximately February 2018.

16.    The parents have requested an opportunity for evaluators and experts and observe the recommended class  at Howell School District as well as evaluate, to no avail. To date, permission has not been granted.

17.    No attempt has been made by the Howell Township Board of Education to evaluate nor propose an IEP to place J.S. in any school/program. To date, no IEP Amendment nor IEP has been provided.

18.    A Due Process Petition was filed on or about July 26, 2018 (**EXHIBIT "C"** without attachments/exhibits).

19.    The following relief was sought, in part, by the parents of J.S. in the aforementioned Due Process Petition (partial listing only):

> a.  Any and all records previously requested - A complete and legible copy of J.S.'s file, including, but not limited to, report cards, progress report(s), attendance file, child study team file, guidance file, evaluation(s), testing (if any) [formal or otherwise], lesson plans, documentation (if any) evidencing how the parents and consultant(s) concerns with regard to J.S.'s schooling were addressed, home instruction records/testing/data,

time/date records of home instruction services received, any and all IEP's; "marked-up" Goals and Objectives, communication books, journals, logs, teacher data, correspondence/e-mails/memorandums, etc., between the parents and the District, Report Cards, Progress Reporting and any and all documentation recorded as to Behavioral Interventions, previously requested and should be considered an on-going request; [Respectfully note that this Petition *may* need to be amended upon receipt of all the requested records and/or documents.];

b. An ORDER to allow SCHI School staff and evaluators to observe the proposed program(s);

c. An appropriate program for J.S. which recognizes and is able to meet J.S.'s *individualized* needs;

d. An appropriate placement for J.S. which recognizes and is able to meet J.S.'s *individualized* needs;

e. ("Stay-Put") Placement (*continued* placement) and/or reimbursement for any and all costs associated with J.S.'s placement at the New Jersey Department of Education ("NJDOE") <u>approved</u> SCHI School, Lakewood, New Jersey;

f. An appropriate IEP for J.S. which recognizes and is able to meet J.S.'s *individualized* needs;

g. Attorney fees/costs; appropriate and *individualized* services;

    h.   IEP driven parent training and home/community programming so as, in part, to generalize skills across settings;

    i.   Reimbursement for any and all costs and fees associated with this matter, including, but not limited to evaluations, fees, costs, travel expenses, etc.;

    j.   Compensatory Education for the time period that J.S. was <u>not</u> provided with a free appropriate public education ("FAPE");

    k.   Any and all relief as deemed appropriate and just by the Court, and the relief further delineated below.

20.   An "<u>Answer</u>" was filed by the district (and/or their counsel) on or about <u>August 6, 2018</u>.

21.   On <u>June 11, 2019</u> ALJ Dorothy Incarvito-Garrabrant issued a "FINAL DECISION GRANTING IN RESPONDENT'S MOTION FOR SUMMARY DECISION" (**EXHIBIT "D"**).

22.   As to the aforementioned "FINAL DECISION" (<u>June 11, 2019</u>) it should be, respectfully, noted, in part:

    a.   The "PROCEDURAL HISTORY" contained within said "DECISION" is <u>not</u> complete <u>nor</u> wholly accurate, *in part*, because:

        1.   Same does <u>not</u> list the basis for the "re-assignment" of this matter to ALJ Incarvito-Garrabrant;

        2.   Same does <u>not</u> list the numerous "Hearings" held with regard to this matter that, *upon information and belief*, were <u>not</u> "Hearings" but were dilatory actions routinely

11

taken by the Office of Administrative Law ("OAL") that only serve to delay the renew and determination of matters that are to be decided within forty-five (45) days[1]; and

3. Same does <u>not</u> reflect that numerous requests for Oral Argument by the undersigned herein which did <u>not</u> occur as to the substantive issues.

b. The "DECISION" delineates in a mere one (1) line that the District "met with the Petitioner" (D.S.), but, ***failed*** to provide the **known facts** as to said meeting, including, but not limited to, that the parents of J.S. observed a class that the District proposed for J.S.; information that same was **vastly different** than what J.S. was receiving at the New Jersey Department of Education ("NJDOE") approved SCHI School; that the parents of J.S. <u>REJECTED</u> the proposed class; that the parents of J.S. had requested further information/documentation as to same and were <u>denied</u>; that independent/private evaluators were <u>denied</u> an opportunity to conduct an observation of the district's proposed class, etc.;

c. The aforementioned "DECISION", in a *mere* one (1) line states that the District, " . . . observed J.S. at SCHI" and ***fails*** to state that the parents of J.S. requested documentation/information

---

[1] See the attached <u>May 6, 2019</u> correspondence of Laurie VanderPloeg, Director, Office of Special Education Programs, of the United States Department of Education, Office of Special Education and Rehabilitative Services, as to the <u>non</u>-compliance found, in part, as to Due Process (**EXHIBIT "E"**).

from the district as to their observation and were <u>not</u> provided with same. In addition, the "DECISION" *fails* to state that the limited observation occurred and the ***failure*** of the District to conduct <u>any</u> observations of <u>any</u> academic settings at the SCHI School, etc.;

d. The "DECISION" "blindly" accepts the District's position <u>without</u> basis <u>nor</u> meaningful delineation as to why the Court concluded that the District offered a comparable program;

e. The "DECISION" <u>without</u> facts <u>nor</u> basis stated that the parents and the District " . . . participated in (a) in-depth meeting" referring to an "IEP – Annual Review meeting" that was, in fact, <u>NOT</u> an IEP meeting but a labelled "a Transfer Student Immediate Review" meeting. (Moreover, as to same, <u>no</u> meaningful documentation was provided <u>despite</u> request.);

f. The "DECISION" ***fails*** to meaningfully include <u>nor</u> delineate <u>nor</u> even mention the "CERTIFICATION" of the Lakewood Case Manager (Chana Zentman) who actually drafted the last IEP (Lakewood IEP dated <u>April 26, 2018</u> – EXHIBIT "**A**" above). Specifically, the <u>February 26, 2019</u> "CERTIFICATION" of Ms. Zentman states, in part, as follows:

   "I am a New Jersey Department of Education licensed School Social Worker since approximately October 2004. I have been employed as a Social Worker and Child Study

Team member by the Lakewood Township Public School District since approximately November 2004. I have served as Case Manager for J.S. from approximately December 2015 until the family withdrew from Lakewood schools in approximately September 2018. Despite the Lakewood School District possessing numerous in-district self-contained programs/placements including, but not limited to, April 2018, *in part*, our Child Study Team *specifically* found to the SCHI School to be appropriate for J.S. due to the small class size (the number of students was significantly less than Lakewood's in-district self-contained programs); the consistency of the programming throughout the year and from year to year; the specialized program that the SCHI School offers to children with J.S.'s multiple educational and individualized needs, and, most telling, J.S.'s proven progress at the SCHI School setting. To merely take Lakewood's IEP and apply it to another setting, despite same being self-contained, would be educationally inappropriate due to the highly *individualized* nature of J.S.'s needs and the program specifically created for him at the SCHI School. I also certify that, to the best of my knowledge, no one from the Howell Township School District substantively spoke with myself, and, to the best of

14

my knowledge anyone from Lakewood's Child Study Team who have had the privilege of knowing and serving J.S. as to his specific/individualized needs and seeing his progress over numerous years. I do note that our secretary was contacted and my attempts to return the call were not successful. (I contacted 1-732-751-2480). I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment." (**EXHIBIT "F"**)

g. Similarly, the "DECISION" ***fails*** to meaningfully include <u>nor</u> delineate the "CERTIFICATION" of J.S.'s teacher (Aliza Fund). Specifically, the <u>December 24, 2018</u> "CERTIFICATION" of Aliza Fund states, in part, as follows:

"I am a New Jersey certified teacher of the handicapped. I posses both a B.A., and, a Master's of Science in education. I was J.S.'s special education teacher, when the Howell Township School District visited the SCHI School on <u>July 17, 2018</u> from 12:40 pm to 1:25 p.m. The date and time of the Howell Township School District visit was scheduled and selected by the Howell Township School District on the morning of the 17th of July. Prior to visiting, the Howell Township School District was advised that during the time the  Howell Township School District selected to observe

there would be no academics and only recreational activities. Moreover, they did not observe any group lessons or individualized work times nor play centers that occur daily. I also visited the Howell Township School District's proposed program on <u>August 2, 2018</u>. The program observed was <u>not</u> appropriate for J.S. due, *in part*, to the number of students, class size, the range of functioning levels, daily living skills were far superior to J.S., and we observed that the students had to traverse a parking lot to access the playground. In addition, the Extended School Year ("ESY") program at SCHI per the last agreed upon IEP (<u>April 26, 2018</u>, Page 28) is <u>five</u> (<u>5</u>) days per week from 9:30 am to 2:30 pm and Howell Township's Extended School Year ("ESY") program, *upon information and belief*, is only <u>four</u> (<u>4</u>) days per week, <u>thus, there is nine (9) hours less instruction per week and in my educational option is **not** "substantially similar"</u>. J.S.'s significant level of impulsivity, distractibility, vision, in part, as he often elopes would not be appropriate for the observed Howell setting. J.S.'s class size last year did not exceed five (5) and this year does not exceed four (4) due to his significant learning and medical issues. It is my professional opinion that a class size larger than five (5)

would significantly hamper J.S.'s ability to progress. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment."

(**EXHIBIT "G"**)

h. Similarly, the "DECISION" *fails* to meaningfully include <u>nor</u> delineate the "CERTIFICATION" of J.S.'s Social Worker (Mina Fund).

Specifically, the <u>December 24, 2018</u> "CERTIFICATION" of Aliza Fund states, in part, as follows:

"I am a New Jersey licensed Clinical Social Worker and a New Jersey certified School Social Worker. I have worked at the New Jersey Department of Education ("NJDOE") approved SCHI School since September 2006. I oversaw J.S.'s program while he attended the New Jersey Department of Education ("NJDOE") approved SCHI School. J.S.'s unique, differing, and intense educational needs warrant a class size not to exceed five (5) even though he has a full-time 1:1 aide. I witnessed the Howell Township School District visit to the SCHI School on <u>July 17, 2018</u>, and, respectfully, state that same was limited in time and concerned itself solely with recreational activities. Moreover, no questions were asked as to J.S.'s *then*

17

functioning levels that had changed since the last IEP of April 2018 due to his significant medical needs. I also observed the proposed Howell Township program in August 2018 and can state emphatically that based on what was observed it is not appropriate nor comparable to J.S.'s program at SCHI. Specifically, in part, even though the Howell Township School District program/placement *alleged* have the same services and equipment as SCHI, the larger number of students [J.S. would be the ninth (9th) student] would not be appropriate for J.S. My opinion is based on daily experience with J.S., for example, when **un**successful attempts have been made to have J.S. be educated when two (2) classes are combined totaling nine (9) to twelve (12) students, etc. Lastly, every minute and day of instruction is vital for J.S. with it being my understanding that the *then* proposed Howell Township Extended School Year ("ESY") program being only four (4) days per week and operating from 8:30 am to 12:30 pm [four (4) hours per day] and SCHI School's Extended School Year ("ESY") program being five (5) days per week and operating from 9:30 am to 2:30 pm [five (5) hours a day and five (5) days per week]. Thus, J.S. would receive nine (9) hours a week less of instruction. Moreover, for

consistency/regression purposes J.S. requires five (5) days a week of instruction [not four (4)] and SCHI staff has seen regression when J.S. has not had instruction for three (3) days in a row. I certify that the forgoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment." (**EXHIBIT "H"**)

i.    The "DECISION" herein denies J.S. and similar students the right to Due Process and a Hearing on the merits.

The "DECISION" herein denies all *similar situated* transfer students the right to Due Process and a Hearing on the merits, and, notably, "snatches away" the right of transfer students like J.S. to even challenge the, in fact, application of an IEP despite the IEP being applied having been written for different districts, different schools, different students; different population of students, different functioning level of students, different services, different settings, etc., without a Hearing.

Moreover, this "DECISION", in essence, and if allowed to remain, would allow "student x" who *always* a Howell Township student to challenge an IEP if *changes* in any of the above occur whether ultimately prevailing or not on the merits, while denying the same right to a Hearing on the substantive *individualized*

needs/issues forcing a classified student merely because a district states "it could do it".[2]

j.  The "DECISION" as to the *alleged* process of the acceptance of the Lakewood School District IEP is <u>not</u> wholly accurate, in part, the Lakewood School District recommended the New Jersey Department of Education ("NJDOE") approved SCHI School over other placements once the IEP was written as to programming due to the unique and truly *individualized* services that J.S. is offered at the SCHI School.

k.  The "DECISION" as to the Howell School District's ("Respondent") actions is baseless, <u>without</u> merit, and does <u>not</u> wholly relate the parents' concerns. Specifically, and by way of one (1) example, the Petitioners (parents of J.S.) while <u>not</u> disputing that five (5) members of the Howell Township Child Study Team participated in the <u>July 19, 2018</u> meeting, but, *fails* to note that not even one (1) SCHI School staff member who had instructed/known J.S. for numerous years was in attendance <u>nor</u> the fact that the former Lakewood School District Case Manager (Chana Zentman), evaluators, teachers who similarly know/knew J.S. were invited to the meeting or even attempted to be spoken with by the Howell Township School District.

---

[2] A majority of the Due Process Petitions at the Office of Administrative Law ("OAL") not only center on the IEP offered, but, also the appropriateness of the IEP as applied even when the parents accept an IEP but then challenge same due to changes in one, or many, of the above factors.

l.  The "DECISION" **selectively** cites the only IEP in affect (EXHIBIT "**A**") and <u>without</u> basis and <u>without</u> testimony and <u>without</u> expertise **wrongly** concluded that an IEP needs to "mandate a certain number of students in a class, a certain composition of classmates, a playground attached to an immediately adjacent to the school building, or that the Extended School Year ("ESY") must occur in the same building as the school year program."

By doing so the Administrative Law Judge ("ALJ") clearly misunderstands/misapplies the concept of special education wherein a child's *truly individualized needs* must be considered.

m.  The "DECISION" <u>wrongly</u> concludes, <u>without</u> basis, that the parents "did not make a good faith effort to produce the Respondent (Howell Township School District) with an opportunity to meet its obligations to J.S."

Specifically, in part, there is <u>no</u> testimony, <u>no</u> meaningful certifications, etc., establishing same. <u>In fact</u>, there are "CERTIFICATIONS" that the program suggested is <u>not</u> appropriate.

Moreover, there is <u>factual evidence</u> that demonstrates that the District refused to meaningfully discuss the parents concerns, ***failed*** to delineate the parental concerns, ***failed*** to allow independent evaluators to observe the proposed program. <u>In fact</u>,

as late as <u>June 5, 2019</u>, independent/private evaluator, Susan K. Caplan, M.Ed., LDT-C, was **again** refused an opportunity to observe the proposed program. [See the attached e-mail exchange between Susan K. Caplan, M.Ed., LDT-C, and the Assistant Superintendent/Pupil Services for the Howell School District (Patricia Callender) attached hereto as **EXHIBIT "I"**.]

n. The "DECISION" contains <u>**mis**</u>application of existing case law and facts.

23. The "Workflow-All Status" Report as of <u>June 12, 2019</u> (**EXHIBIT "J"**) is <u>not</u> wholly accurate as to the procedural history herein. Specifically, in part (partial listing only):

a. The "Workflow" *fails* to mention that the <u>November 21, 2018</u> Hearing in this matter was <u>adjourned</u> at the request of the District (**EXHIBIT "K"**);

b. The "Pre-Hearing ORDER" dated <u>November 9, 2018</u> (**EXHIBIT "L"**) was, *upon information and belief,* <u>not</u> adhered to by the Administrative Law Judge <u>nor</u> the District, in part, as a "Hearing" was scheduled for <u>June 12, 2019</u> at 9:30 am with <u>no</u> adjournments to be granted (Page 2, Paragraph 3). Moreover, all discovery and "5 Day" disclosures were required to be exchanged in accordance with Page 3, Paragraph 6 of said "ORDER". [The MOTION practice herein was envisioned.];

c. Both parties herein attempted to ascertain the status of the MOTIONS (plural) filed to no avail, and, clearly were aware that a Hearing was to be held on June 12, 2019 (**EXHIBIT "M"**);

d. Both parties communicated on numerous occasions with the ALJ's chambers in an effort to ascertain the status of any and all pending MOTIONS (plural), to no avail (**EXHIBIT "N"**); and

e. On June 4, 2019 "NOTICE without a subject matter listed) was sent by the Office of Administrative Law that a **telephone Hearing** would occur on June 12, 2019 (**EXHIBIT "O"**).

24.    In accordance with Code (N.J.A.C. 1:6-10.1 entitled "Discovery"), the aforementioned Pre-Hearing ORDER, the law, specifically, V.J. & Z.J. o/b/o L.J. v. Audubon Bd. of Educ., 2008 U.S. Dist. LEXIS 71122 (2008) (**EXHIBIT "P"**) the parents (Petitioners) via counsel in accordance with the "5 Day Rule" provided to the District and the Administrative Law Judge extensive documents, reports, etc., that would be relied upon, witness lists, etc. (**EXHIBIT "Q"**)

Specifically, in part, the U.S. District Court Judge Jerome B. Simandle, wrote in Audubon, in part:

"The five-day rule furthers the goal of 'prompt resolution of questions involving the education of handicapped children,' *Id*. By providing unambiguous requirements and strong incentives for pre-hearing disclosures. See Pachl ex rel. Pachl v. School Bd. of Independent School Dist. No. 11, No. 02-4065, 2005 U.S. Dist. LEXIS 2758, 2005 WL 428587, at 18 (D. Minn. Feb. 23, 2005). That is, the rule puts parties to IDEA

administrative proceedings on notice as to precisely what must be disclosed ("any evidence at [a] haring") and when ("at least five business days before the hearing"), and reduces the likelihood that a hearing would have to be delayed or adjourned on account of disputes or confusion over a party's disclosure obligations. N.J.A.C. 1:6A-10.1(c). Notwithstanding Defendant's complaint about the ALJ's "hyper[-]technical" application of the five-day rule in this case, then, (Schwerin Aff. P 5), it is precisely the categorical, unambiguous nature of the rule that serves "the IDEA's goal of prompt resolutions of disputes . . [*15] . . concerning the disabled student's education." Dell, 32 F.3d at 1051."

"In light of the five-day rule's "plain language," courts faced with challenges to decisions by ALJs excluding evidence under the role have consistently upheld the ALJ determinations. Pachl, 2005 U.S. Dist. LEXIS 2758, 2005 WL 428587, at *18 (noting that the "plain language of [34 C.F.R. § 303.422(b)(3)] provides a party the right to exclude evidence not disclosed to a party at least five business days before the hearing. This right is not curtailed in the event of a continuance") (citations omitted); see also Schoenbach, 2006 U.S. Dist. LEXIS 38667, 2006 WL 1663426, at *6; of J.T. ex rel. A.T. v. Medford Bd. of Educ., 118 Fed. Appx. 605, 607 (3d Cir. 2004) ("there is no basis to reverse the decision of [the] ALJ . . . It should be noted that Appellants' counsel has never explained his reasons for not complying with Appellees' request to identify witnesses to be called at the . . . hearing"). The Court does not find that a different out come is warranted

24

here and will accordingly deny Defendant's motion for summary judgement as to its counterclaim."

25.    **Only after** <u>all</u> "Discovery" and "5 Day Disclosures" were provided did Howell School District's counsel advise that she had spoken to the Court and that the "5 Day Rule" requirements were relaxed (June 5, 2019 @ 5:12 pm) (**EXHIBIT "R"**).

26.    Thereafter, this office correspondence with the ALJ's Assistant, Lysa M., in numerous e-mails on Tuesday, June 5, 2019, in the evening confirming that a telephone <u>Hearing</u> was still scheduled for June 12, 2019 and that no conclusive decision had been made by the ALJ as to discovery, etc. (**EXHIBIT "S"**)

27.    <u>Un</u>like what was delineated in Exhibits "**R**" and "**S**" above (Paragraphs 25 & 26) on <u>June 6, 2019</u> at 2:28 pm **yet another** "Judicial Assistant" forwarded correspondence from the ALJ stating, in part, that a telephone <u>Hearing</u> would be held and "five day" requirements are "not required" (**EXHIBIT "T")**. [Please note that the "5 Day" requirements were already due on <u>June 5, 2019</u>.]

   [Prior to same the undersigned forwarded extensive correspondence to the ALJ on <u>June 6, 2019</u> (**EXHIBIT "U"**).]

28.    On <u>June 7, 2019</u> correspondence to the ALJ from the undersigned was submitted (**EXHIBIT "V"**) as to the above specifically providing <u>all</u> of the relevant procedural history in this matter and, again, requesting an in-person Hearing occur on <u>June 12, 2019</u> as had been scheduled for many months.

   <u>No</u> response was received.

29.    On <u>June 11, 2019</u> at 4:19 pm the "DECISION" that is being appealed herein was received (**EXHIBIT "W"**).

30.   The "DECISION" of <u>June 11, 2019</u>, in addition, **fails** to meaningfully note <u>nor</u> consider the MOTION<u>S</u> (plural) by the parents, and, the numerous filings and "CERTIFICATIONS" herein, to wit:

a.  District MOTION for Summary Decision dated <u>December 14, 2018</u>.

The **only** "CERTIFICATION" attached thereto is that of Assistant Superintendent/Pupil Services dated <u>December 13, 2018</u> that merely attaches documents, and, *somehow*, (<u>without</u> basis) concludes, in part:

"To date, Petitioners have not permitted J.S. to attend school in the Howell Township School District."

(**EXHIBIT "X"**, Page 3, Paragraph 4)

b.  Response to the District's MOTION and MOTION "to enforce "stay-put" and/or, in the alternative, to preserve J.S.'s long-term placement at the New Jersey Department of Education ("NJDOE") approved SCHI School, Lakewood, New Jersey, wherein J.S. ahs attended via an IEP since the age of three (3) due to his significant medical and learning issues. The request "preservation" of J.S.'s educational program should *continue* <u>until</u> a Hearing occurs that will establish, <u>via factual and expert testimony</u>, whether the mere *alleged* adoption of the last agreed upon <u>Lakewood</u> IEP (<u>April 26, 2018</u>) by the Howell Township Board of Education can provide a "free appropriate public

education, including services comparable to those described in the last agreed upon IEP and until a new IEP is agreed upon, 20 U.S.C. § 144(d)(2)(c)(i) 2004" dated December 24, 2018 (**EXHIBIT "Y"**).

Said Response and MOTION states, in part:

a. "As U.S. District Court Judge Bumb stated, in part, in the Cinnaminson Twp. Bd. of Educ. v. K.L. o/b/o R.L., Civil No.: 16-3568, while the lack of stay-put *may* apply in certain circumstances with her describing same as an "unfortunately reality" the Court noted that this is "limited by other safeguards as federal and state regulations impose strict timing requirements" on the implementation of IEPs and adjudication of due process hearings", quoting Michael C. v. Radner Twp. School Dist., 202 F.3d 642, 651 (3d Cir. 2000), something that the New Jersey Office of Administrative Law ("OAL"), unfortunately, does not provide due, in part, due a back log of cases and scheduling conflicts." (Page 2, Footnote 1);

b. "The Lakewood Township School District IEP is attached hereto as EXHIBIT "A" and is dated

April 26, 2018 and was crafted based upon numerous evaluations, on-site visits, participation of both Lakewood and SCHI staff who had daily exposure to J.S., and a Team who knew J.S. and his unique learning style for some six (6) years. This is drastically different than a one-time brief visit to the SCHI School by the Howell Township staff (see below)." (Page 2, Footnote 3);

c. "Without conducting any formal evaluation, without speaking with SCHI staff as to J.S.'s functioning levels and his persona, and with a mere thirty-five (35) minute visit during "recreational time" (recess) at SCHI, Howell staff decided without basis that the district's Memorial Elementary School for Extended School Year ("ESY") 2018 was "substantially similar", despite only four (4) days a week and ran from 8:30 – 12:30 pm [SCHI is five (5) days a week and is operational from 9:30 am to 2:30 pm], and for the 2018-2019 year the Griebling Elementary School. How can Howell state as to Extended School Year ("ESY") program the

<u>Howell program is substantially similar if it is one (1) day less/week and an hour less a day [six (6) hours less a week?]</u> How can Howell state Griebling Elementary school is appropriate and/or "similarly similar" if they did <u>not</u> speak with any SCHI School staff <u>nor</u> Lakewood School staff and only observed J.S. for a mere thirty-five (35) minutes. Surely, in deciding whether a "FAPE" is provided and/or if "substantially similar" exists it is not by merely "adopting" the last agreed upon IEP <u>without</u> reviewing <u>nor</u> analyzing class size, student-teacher ratio, etc., as the SCHI School staff did (See the attached "Certifications" of Mina Fund and Aliza Fund." (Page 2, Footnote 4);

d. "J.S. according to the last agreed upon IEP, albeit, issued by the Lakewood Township Board of Education, is dated <u>April 26, 2018</u> (EXHIBIT "A"). Said IEP was written when J.S. was six (6) years old [DOB: 4/17/12], "classified" J.S. as Eligible for Special Education and Related Services pursuant to the classification of "Other Health Impaired" ("OHI"), in part, because he is

" . . . diagnosed with WAGR Syndrome, a rare genetic syndrome in which affected children are pre-diagnosed to develop Wilms Tumor (a tumor of the kidneys); Aniridia (absence of the Iris), Genet touring Anomalies (undescended testes), and Retardation. Jeff presents with considerable developmental delays and significant vision impairments" (Page 17 of the IEP). The IEP also states that J.S. had had surgery to remove a Wilms Tumor, had a few months of chemotherapy, has three more rounds of chemotherapy planned, and is followed by a Urologist, Nephrologist, Pulmonologist, Ophthalmologist, and Oncologist at "CHOP" (Children's Hospital of Philadelphia) (Page 17). Moreover, on the "Placement in LEAST RESTRICTIVE ENVIRONMENT" page (Page 22) the Child Study Team and staff who worked with J.S. for approximately four (4) years specifically concluded, in part, considered in-district self-contained programs and rejected same for a plethora of reasons with a "low staff to student ratio" with continuity of staff who are

<u>specifically trained and have "worked with him"</u> <u>an integral part of the rationale</u>. Specifically, at the New Jersey Department of Education ("NJDOE") approved SCHI school where J.S. *continues*." (Page 3, Footnote 4);

e.   "While the Howell Township School District places much weight on the <u>Cinnaminson</u> matter our situation is much *different* and *distinguishable*. Specifically, <u>to the credit of the</u> <u>Cinnaminson school district **prior** to disturbing</u> <u>the child therein, R.L.'s placement (at QSH</u> <u>School) representatives of the Board observed</u> <u>R.L. at the QSH School on **three (3)** occasions,</u> <u>attempted to formally evaluate R.L.'s</u> <u>educational disabilities, etc., in an attempt to</u> <u>obtain to the necessary information to complete</u> <u>an appropriate IEP</u>. (See ALJ Ascione's DECISION dated May 30, 20**17** after the U.S. District Court remanded the matter as EXHIBIT "B" hereto, EDS-14389-15, Pages 13-15.)" (Page 4, Footnote 5);

f.   "<u>IDEA requirements</u> The primary purpose of the Individuals with Disabilities Education Act

(IDEA) is to ensure that children with disabilities are provided with a Free Appropriate Public Education (FAPE). 20 U.S.C. § 1400(d)(1)(a). A FAPE is defined as "special education and related services" that (1) are provided at public expense, under public supervision and direction, and without charge; (2) meet the standards of the State's educational agency; (3) include an appropriate preschool, elementary or secondary school education in the State; and (4) <u>are provided in conformity with the student's Individualized Education Program</u>. *Moorestown Twp. Bd. of Educ. v. S.D. and C.D.*, 811 F. Supp. 2d 1057, 1065 (D.N.J. 2011) (citing 20 U.S.C. § 1401(9)). New Jersey law likewise ensures students with disabilities are provided with a FAPE, through an individualized education program (IEP) developed collaboratively by the child's parents, teachers, and local school officials. N.J.S.A. 18A:46-1 to -46; see also *Moorestown*, 811 F. Supp. at 1065-66; 20 U.S.C.A. §§ 1414(d)(1)(A), 1401(14) and 1412((a)(4). <u>Respondent **failed** to Offer an</u>

Appropriate Educational Program In its motion and argument, Respondent *misconstrues* the facts of this case in an attempt to avoid its statutory obligation to Petitioners. Specifically, Howell maintains that the "stay-put" provisions of IDEA do not apply when the parents unilaterally move their child to a new school district regardless of what the new district does or does not do. Howell Township *also **fails*** to acknowledge the reasoning behind these conclusions, as demonstrated in the case law they themselves cite. "Although the 'stay-put' provision is meant to preserve the status quo, [courts] recognize that when a student transfers jurisdictions, the status quo no longer exists." *Cinnaminson Twp. Bd. of Educ. v. K.L.*, No. 16-3586 (RMB/KMW), 2016 WL 4212121, at *5 (D.N.J. Aug. 9, 2016). However, not at all costs, especially when the new district ***fails*** to take the very steps they would be required to take to propose an IEP if the student would have resided within their district from the "get go". In this present case, Petitioners seek to preserve the status quo by

keeping the student where he was, in accordance with the Lakewood IEP.  There is no reason for the status quo to stop existing, except for Howell's refusal <u>despite</u> Howell Township's ***failure*** to make any real attempts to facilitate a smooth transition as was done by the Child Study Team in <u>Cinnaminson</u>.[3]  Even if the stay-put provision is inapplicable, the statutory framework for intra-state transfers <u>still requires comparable services</u>, which Howell has <u>no</u> basis to say it can offer.  A student who transfers within a state is entitled to "services comparable to those described in the previously held IEP, in consultation with the parents until such time as the local educational agency adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with

---

[3] Moreover, **un**like the facts in <u>J.F. v. Byram Twp. Bd. of Educ.</u>, 327 Ed. Law Rep. 603 (2015) Howell's *alleged* intent to implement J.S.'s Lakewood IEP is belied by the very staff who educate J.F. and who that certify same is <u>vastly</u> different and would *adveresly* effect J.S.'s education. In addition, should "stay put" *somehow* not apply, the 9th Circuit case cited within <u>Bryam</u>, <u>M.S. ex. Rel. G. v. Vashon Island Sch. Dist.</u>, 337 F.3d 1115 at 1134 specifically clearly provides the parents of a student to "dispute" the new district placement. <u>In addition</u>, within the <u>Cinnaminson</u> case cited by the district there is reference to <u>Michael C. v. Radnor Twp. Sch. Dist.</u>, 202 F.3d 642, 651 (3rd Cir 2000) that states, in part, even if "stay put" does not apply and termed within as an "unfortunate reality" same is limited by other safeguards as Due Process Hearings.  <u>Id.</u> Thus, to dismiss the Petition herein could deny Due Process. (**Can't be**!!!)

Moreover, as J.S. continues at SCHI he should be allowed to continue where all agree he is making "progress" in a setting that is vastly different than the two (2) programs proposed by Howell Township.

Federal and State law." 20 U.S.C.A. § 1414 (West).[4] Here, the offered program is far from comparable to what J.S. was and continues to receive under the Lakewood IEP. Howell has offered a program with class sizes being **three times larger** than those offered at SCHI and which **requires transferring** between different schools during the year, etc. Moreover, the students at Howell are higher functioning, a factor which would be to J.S.'s detriment, particularly when working on group activities. In contrast, class sizes at SCHI do not exceed four (4) students, programs are offered year round within the same building, and classes are individualized based upon the abilities of each student. Despite these _significant differences_, Howell continues to maintain they are offering comparable services. As further insult to injury,

---

[4] Reference is made to two (2) other _crucial_ points contained within <u>Cinnaminson</u>, to wit:

1. "This is not to say that no situation exists where a "stay put" placement will be carried from one state entity to another" citing the case of <u>Pardini v. Allegheny Int. Unit</u>, 420 F.3d 181 (3d Cir. 2005); and

2. Even if stay put does <u>not</u> apply should "comparable services" be offered (they are <u>not</u>) similar to the <u>Cinnaminison</u> matter wherein ALJ Ascione was allowed to continue the Hearing even after "stay put" was deemed not applicable by the District Court as to the appropriateness of the program/placement as delineated in <u>Cinnaminson</u>.

Howell contends that the cursory and extremely brief singular observation they made of J.S.'s current placement supports a finding that the Howell program *somehow* is "substantially similar". This is simply untrue, particularly in light of the fact that the Howell representatives observed little, if any, class time while at SCHI. The school district bears burden of proving, at Due Process Hearing, that the Individualized Education Program it proposed for a special needs student was appropriate; the obligation of parents is merely to place in issue appropriateness of program. Lascari v. Board of Educ. of Ramapo Indian Hills Regional High, 116 N.J. 30, 560 A.2d 1180 (1989) *citing Education of the Handicapped Act*, §§ 602–661, 614(a)(5), *as amended*, 20 U.S.C.A. §§ 1401–1461, 1414(a)(5); N.J.S.A. 18A:46–1 to 18A:46–46. Here, except for **un**supported limited assertions, the Respondent cannot demonstrate the appropriateness of the Howell program as meeting the same requirements of the SCHI program. As such, Respondent cannot sustain its

burden a summary decision and has provided this court with no legal basis to support its motion for summary decision. <u>Respondent is Obligate to Pay Costs incurred by Petitioners at SCHI</u> Respondent breached its duty under IDEA and New Jersey law when it failed to offer Petitioners a FAPE for J.S.   When a school district fails to ensure that a FAPE would be provided, parents have the right to unilaterally place their child in a private school and receive reimbursement from the school district for tuition. <u>Sch. Comm. of Burlington v. Dep't of Educ.</u>, 471 U.S. 359, 370, 105 S. Ct. (1996), 2002-03, 85 L. Ed.2d 385, 395-96 (1985); N.J.A.C. 6A:14-2.10(b).[5] Further, under the New Jersey Administrative Code, an administrative law judge ("ALJ") can require the school district to reimburse parents for the unilateral placement of their child in a school.    N.J.A.C. 6A:14-2.10(b) requires that "[i]f the parents of a student with a disability, who previously received

---

[5] In this matter Petitioners contend that "stay put" dictates *continued* placement at the New Jersey Department of Education ("NJDOE") approved SCHI School. However, assuming arguendo, this Court *somehow* does not accept same as the parents of J.S. rejected the proposed Howell Township IEP and provided notice that J.S. could <u>continue</u> at SCHI, reimbursement, in the form of *continued* payment to SCHI, would be subject to a Plenary Hearing that was denied to the parents.

special education and related services from the district of residence, enroll the student in a nonpublic school . . . or approved private school for students with disabilities even without the consent of or referral by the district board of education, an administrative law judge may require the district to reimburse the parents for the cost of that enrollment if the administrative law judge finds that the district had not made a free, appropriate public education available to that student in a timely manner prior to that enrollment and that the private placement is appropriate." *See* <u>P.B. and M.B. on behalf of H.B. v. Washington Township Board of Education</u>, 2016 WL 3974370 (N.J. Adm. July 14, 2016). As in a case seeking tuition reimbursement, an award of prospective payment of tuition is warranted if (1) the school failed to offer a FAPE; (2) the private placement is proper; and (3) equitable considerations do not warrant reduction or denial of the tuition or placement. <u>Florence Cnty. Sch. Dist. 4 v. Carter ex. rel. Carter</u>, 510 U.S. 7, 13, 114 S. Ct. 361,

365, 126 L. Ed. 2d 284, 292 (1993); <u>Draper v.</u>
<u>Atlanta Indep. Sch. Sys</u>., 518 F.3d 1275, 1286
(11th Cir. 2008).  As a matter of law, Petitioners
have established the necessary elements to
require the Respondent to pay the expenses
incurred and to be incurred in continuing J.S. at
SCHI under "stay put"; Respondent's proffered
program fails to provide a "substantially similar"
program and *fails* to provide an appropriate
FAPE, thus, dictating that J.S. continue the SCHI
School at district expense until a Hearing occurs;
the *continued* private placement of J.S. at SCHI
is clearly proper; and there are no equitable
considerations that would warrant reduction or
denial of Respondent's responsibilities for
reimbursement and the prospective payment of
the cost to allow J.S. continued enrolment at
SCHI.    **CONCLUSION** Because there are
genuine questions of material fact as to whether
Howell actually offered a Free and Appropriate
Public Education in a "substantially similar"
manner by claiming, <u>without</u> basis, that they
could fulfill the Lakewood IEP *without* the out of

district placement at SCHI, Petitioner respectfully asks that Respondent's Motion for Partial Summary Judgment be DENIED, and, J.S.'s placement at SCHI *continues* which he has attended since age 3 pursuant to the last agreed upon IEP until a Hearing occurs." (Pages 7-11)

c. On <u>February 26, 2019</u> the undersigned submitted a sur-reply in connection with the District's MOTION for Summary Decision to the ALJ (**EXHIBIT "Z"**);

d. On <u>February 27, 2019</u> the District forwarded a response to the ALJ (**EXHIBIT "AA"**) with <u>no</u> "CERTIFICATIONS" attached thereto; and

e. As delineated above, the Petitioners submitted four (4) "CERTIFICATIONS", to wit, Aliza Fund (December 24, 2018); Chana Zentman (February 26, 2019); Mina Fund (December 24, 2018); and the parents of J.S. (February 26, 2019) (**EXHIBIT "BB"**).

**CLAIM FOR RELIEF**

**FIRST CAUSE OF ACTION**
**VIOLATION OF 20 U.S.C. § 114 (D)(2); N.J.A.C. 6A:14-3.7**

31.    Plaintiff realleges paragraphs 1 through 30 as if fully stated herein.

32.    The **un**disputed documents and clearly established are law dictated that the Administrative Law Judge's DECISION as to dismissal must be reversed.

33.     The IDEIA provides when an administrative decision is appealed to a federal district court, the parents are entitled to recover their attorney's fees as an element of costs if they prevail in the action. *See* 20 U.S.C. § 1415(i)(3)(B).

34.     J.S.'s parents are therefore entitled to recover their fees should this Court grant the relief requested.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs ask this Court to grant the following relief:

1.     An ORDER **reversing** the Administrative Law Judge's Decision and to permit a Hearing on the merits and granting of the parents MOTION<u>S</u> (plural);

2.     "Stay Put" be ORDERED and immediate payment to the New Jersey Department of Education ("NJDOE") approved School for Children with Hidden Intelligence ("SCHI"), Lakewood, New Jersey, pursuant to the last IEP and/or reimbursement to the parents;

3.     Simultaneously, referral of this matter to the U.S. Department of Education ("USDOE") for a review as to the ***failure*** of the Office of Administrative Law ("OAL") to review and decide matters within forty-five (45) days, etc.;

4.     An award of attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3), *see P.G. v. Brick Township Bd. of Educ.*, 124 F. Supp. 2d 251 (D.N.J. 2000); and

5.     Such other relief that the Court deems just and equitable.

Dated:   **June 28, 2019**

*Michael I. Inzelbuch, Esquire/s/*
_____
          **Michael I. Inzelbuch, Esquire**
          **Attorney for Plaintiffs (Parents)**